Michael S. Kun (State Bar No. 208684)
Aaron Olsen (State Bar No. 224947)
EPSTEIN BECKER & GREEN, P.C.
1925 Century Park East, Suite 500
Los Angeles, CA 90067
Telephone:  310.556.8861
Facsimile:  310.553.2165
aolsen@ebglaw.com
mkun@ebglaw.com

Attorneys for Defendants
BRINDERSON CONSTRUCTORS, INC.
AND BRINDERSON, L.P.

## UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCISCO P. MAIAVA, an individual appearing individually and on behalf of all others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>BRINDERSON CONSTRUCTORS, INC., BRINDERSON HOLDINGS COMPANY, BRINDERSON, L. P. and DOES 1 through 30, inclusive,<br><br>        Defendants. | CASE NO. 2:14-CV-05514 BRO (AJWx)<br><br>**DEFENDANTS BRINDERSON CONSTRUCTORS, INC. AND BRINDERSON, L.P.'S NOTICE OF MOTION AND MOTION TO DISMISS; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>DATE:     September 15, 2014<br>TIME:     1:30 p.m.<br>CTRM.:   14 |

**TO PLAINTIFF AND TO HIS COUNSEL OF RECORD:**

Defendants Brinderson Constructors, Inc. ("Brinderson") and Brinderson, L.P. (collectively, "Defendants") hereby move to dismiss the instant action.

This motion is made pursuant to 9 U.S.C. § 1, et seq., and Fed.R.Civ.P. 12(b) and 12(b)(6) on the grounds that Plaintiff Francisco P. Maiava ("Plaintiff") failed to grieve and arbitrate the claims raised herein, as expressly required by the collective bargaining agreement ("CBA") governing the terms and conditions of his employment with Brinderson.  The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1 et seq., strongly favors the enforceability such provisions, particularly when they have been negotiated as part of a CBA.

Brinderson complied with L.R. 7-3 by conducting a conference with Plaintiff's counsel on July 28, 2014 to discuss the instant motion.

This motion is based on this notice, the attached memorandum of points and authorities, the request for judicial notice, the declaration of Gary Wilson, all the records and documents on file in this matter, and any oral or documentary evidence presented at the hearing of this motion.

DATED:  August 8, 2014                     EPSTEIN BECKER & GREEN, P.C.


By:   /S/ Michael S. Kun
        Michael S. Kun
        Aaron Olsen
        Attorneys for Defendants BRINDERSON
        CONSTRUCTORS, INC. and
        BRINDERSON. L.P.

# TABLE OF CONTENTS

Page(s)

I.      INTRODUCTION ................................................................................................. 1

II.     STATEMENT OF FACTS ..................................................................................... 2

    A.  Brinderson Is Engaged In Interstate Commerce. ................................... 2

    B.  Plaintiff's Employment Was Governed By A CBA. ................................ 2

    C.  The CBA Contains Mandatory Grievance And Arbitration Provisions That Include Plaintiff's Claims Herein. ................................... 3

    D.  Plaintiff Did Not Grieve Or Arbitrate His Claims Prior To Filing This Action. ......................................................................................... 4

III.    ARGUMENT ....................................................................................................... 5

    A.  The Action Should Be Dismissed Because Plaintiff Failed To Grieve And Arbitrate His Claims. ........................................................... 5

        1.  The Law Favors Enforcement Of Collectively Bargained Agreements To Arbitrate Individual Worker Disputes. ................ 5

        2.  Plaintiff Cannot Satisfy His Burden To Demonstrate That The Mandatory Grievance And Arbitration Provisions Of The CBA Do Not Extend To The Claims He Has Attempted To Raise Herein. ........................................................................ 7

        3.  The CBA Establishes A "Clear and Unmistakable" Agreement To Grieve And Arbitrate The Claims In This Action. ................................................................................. 9

        4.  Labor Code § 229 Supports Requiring Plaintiff To Grieve And Arbitrate His Claims. ................................................. 10

        5.  Any Argument That The CBA Is Contrary To State Public Policy Is Unavailing. ................................................. 12

        6.  The Grievance And Arbitration Provision Extends To Brinderson, L.P. ...................................................................... 15

    B.  The FAC Must Be Dismissed. ............................................................. 16

    C.  The Court Should Also Dismiss Plaintiff's PAGA Claims. ................. 19

    D.  Plaintiff's Anticipated Request To Conduct Discovery Must Be Denied. ............................................................................................. 20

IV.     CONCLUSION ................................................................................................. 20

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**FEDERAL CASES**

4

14 Penn Plaza LLC v. Pyett
556 U.S. 247 (2009) ........................................................ 2, 5, 6, 14

5

6

Akar v. Prescott Hotel
2008 U.S. Dist. LEXIS 43066 (N.D. Cal. 2008) ............................... 18

7

Allied-Bruce Terminix Companies, Inc. v. Dobson
513 U.S. 265 (1995) ................................................................. 11

8

9

Carr v. Pacific Maritime Ass'n
904 F.2d 1313 (9th Cir. 1990) ..................................................... 17

10

Caterpillar Inc. v. Williams
482 U.S. 386 (1987) ................................................................. 13

11

12

Chappel v. Laboratory Corp. of America
232 F.3d 719 (9th Cir. 2000) ....................................................... 18

13

Choice Hotels Int'l., Inc. v. BSR Tropicana Resort, Inc.
252 F.3d 707 (4th Cir. 2001) ....................................................... 18

14

15

Commodities Export Co. v. Detroit Int'l Bridge Co.
695 F.3d 518 (6th Cir. 2012) ....................................................... 19

16

Cox v. Ocean View Hotel Corp.
533 F.3d 1114 (9th Cir. 2008) ...................................................... 7

17

18

DelCostello v. Int'l Board of Teamsters
462 U.S. 151 (1983) ................................................................. 16

19

F. Fitzgerald Constr. Co. v. Pedersen
324 U.S. 720 (1945) ................................................................. 11

20

21

Filimex, L.L.C., v. Novoa Investments, L.L.C.
2006 U.S. Dist. LEXIS 56039 (D. Az. July 17, 2006) .......................... 18

22

Herrera, et al. v. CarMax Auto Superstores California, LLC
Case No. 5:14-cv-00776-MWF-VBK (C.D. Cal. July 2, 2014) ............. 1, 17

23

24

Hines v. Anchor Motor Freight, Inc.
424 U.S. 554 (1976) ................................................................. 16

25

KKE Architects, Inc. v. Diamond Ridge Development, LLC
2008 U.S. Dist. LEXIS 17127 (C.D. Cal. 2008) ............................... 17

26

27

Lewis v. UBS Fin. Serv., Inc.
818 F.Supp.2d 1161 (N.D. Cal. 2011) ........................................... 17

28

ii

Local 174, Teamsters, Etc. v. Lucas Flour Co.
  369 U.S. 95 (1962) ................................................................. 14, 15

Luchini v. CarMax, Inc.
  2012 U.S. Dist. LEXIS 157253 (E.D. Cal. 2012) ........................... 19

Luna v. Kemira Specialty, Inc.
  575 F.Supp.2d 1166 (C.D. Cal. 2008) ................................... 17, 19

Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.
  473 U.S. 614 (1985) ................................................................. 6

Perry v. Thomas
  482 U.S. 483 (1987) ................................................................. 11

Quevedo v. Macy's Inc.
  798 F.Supp.2d 1122 (C.D. Cal. 2011) ................................... 17, 19

Soremekun v. Thrifty Payless, Inc.
  509 F.3d 978 (9th Cir. 2007) .................................................. 16

Sparling v. Hoffman Constr. Co.
  864 F.2d 635 (9th Cir. 1988) .............................................. 17, 18

Swanson Restoration & Design, Inc. v. Paul Davis Restoration, Inc.
  2007 U.S. Dist. LEXIS 96520 (C.D. Cal. 2007) ........................... 18

Textile Workers v. Lincoln Mills
  353 U.S. 448 (1957) ................................................................. 13

Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc.
  368 F.3d 1053 (9th Cir. 2004) ................................................. 17

Thompson v. Nienaber
  239 F.Supp.2d 478 (D. N.J. 2002) .......................................... 18

United Food & Commercial Workers v. Foster Poultry
  74 F.3d 169 (9th Cir. 1995) ..................................................... 5

United Paperworkers Int'l. Union, AFL–CIO v. Misco, Inc.
  484 U.S. 29 (1987) ................................................................. 16

UPS Ground Freight, Inc. v. Farran
  2014 U.S. Dist. LEXIS 1473 (S.D. Ohio 2014) ........................... 19

Vaca v. Sipes
  386 U.S. 171 (1967) ................................................................. 13

Vandevere v. Lloyd
  644 F.3d 957 (9th Cir. 2011) .................................................. 19

Wright v. Universal Maritime Service Corp.
  525 U.S. 70 (1998) ............................................................... 6, 9

iii

1

**CALIFORNIA CASES**

2

24 Hour Fitness, Inc. v. Superior Court
   66 Cal.App.4th 1199 (1998)..................................................................15

3

Boucher v. Alliance Title Co., Inc.
   127 Cal.App.4th 262 (2005)..................................................................15

4

Buckhorn v. St. Jude Heritage Medical Group
   121 Cal.App.4th 1401 (2004)..................................................................7

5

California Correctional Peace Officers Assn. v. State of California
   142 Cal.App.4th 198 (2006)....................................................................6

6

Cione v. Foresters Equity Servs.
   58 Cal.App.4th 625 (1997)......................................................................7

7

Cone v. Union Oil Co. of Cal.
   129 Cal.App.2d 558 (1954)....................................................................16

8

Dryer v. Los Angeles Rams
   40 Cal.3d 406 (1985).................................................... 12, 13, 14, 15

9

Harris v. Superior Court
   188 Cal.App.3d 475 (1986)....................................................................15

10

Iskanian v. CLS Transportation Los Angeles
   59 Cal.4th 348 (Cal. 2014)....................................................................19

11

Kirby v. Immoos Fire Protection, Inc.
   53 Cal.4th 1244 (2012)..........................................................................12

12

Lane v. Francis Capital Management
   224 Cal.App.4th 676 (2014)..................................................................12

13

McManus v. CIBC World Markets Corp.
   109 Cal.App.4th 76 (2004)....................................................................11

14

Plumbing, Heating Etc. Council v. Howard
   53 Cal.App.3d 828 (1975)................................................................5, 11

15

Posner v. Grunwald-Marx, Inc.
   56 Cal.2d 169 (1961).............................................................................5, 7

16

Ronay Family Limited Partnership v. Tweed
   216 Cal.App.4th 830 (2013)..................................................................15

17

Service Employees Internat. Union, Local 1000 v. Department of Personnel
   Admin.
   142 Cal.App.4th 866 (2006)....................................................................7

18

Vasquez v. Superior Court
   80 Cal.App.4th 430 (2000)......................................................................6

19

Warehouse, Processing Etc. Union v. Hugo Neu Proler Co.
   65 Cal.App.4th 732 (1988)....................................................................13

20

21

22

23

24

25

26

27

28

FIRM:26059904v2

**FEDERAL STATUTES**

9 U.S.C. § 3 ....................................................................................................17

29 U.S.C.A. § 185(a) .............................................................................12, 13, 14

9 U.S.C. § 1 et seq. ..............................................................................11, 17, 19

**FEDERAL RULES**

Fed.R.Civ.P. 12(b)(1) ...............................................................................17, 18

Fed.R.Civ.P. 12(b)(6) ...............................................................................17, 18

**STATE STATUTES**

Article 1 of pt. 1 and Chapter 1 of the Labor Code ..................................12

California Bus. & Prof. Code § 17200 et seq. ......................................4, 12

California Labor Code § 200 .....................................................................12

California Labor Code § 204 .......................................................................9

California Labor Code § 226(a) ..................................................................8

California Labor Code § 226.7 ..................................................................12

California Labor Code § 229 ....................................................10, 11, 12

**OTHER AUTHORITIES**

29 CFR § 776.11 .......................................................................................11

California Industrial Wage Order No. 16-2001........................1, 8, 9, 10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Just several weeks ago, the Court granted a motion to dismiss a putative class action lawsuit where the plaintiffs had failed to grieve and arbitrate their claims in an action where one of the lawyers representing plaintiffs also represents Plaintiff Francisco P. Maiava ("Plaintiff") herein.  Herrera, et al. v. CarMax Auto Superstores California, LLC, Case No. 5:14-cv-00776-MWF-VBK (C.D. Cal. July 2, 2014).[1]  (RJN, Ex. E.)  The same result should attend here.

In this putative class action lawsuit, Plaintiff alleges, inter alia, that he and other putative class members were not provided meal and rest periods and were not paid all wages earned, including overtime.  He has brought other claims related to these alleged violations, including a claim that he and other employees were not paid all of the wages owed to them upon the termination of their employment.  As in Herrera, all of Plaintiff's claims must be dismissed because he failed to grieve and arbitrate them, as he was required to do.

As discussed more fully below, during the entirety of Plaintiff's employment with Brinderson Constructors, Inc. ("Brinderson"), the terms and conditions of Plaintiff's employment were governed by a collective bargaining agreement ("CBA") negotiated by United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union On Behalf of International Union of Petroleum and Industrial Workers – United Steel Workers, Local 1945 ("USW").  The CBA contains comprehensive and mandatory grievance and arbitration provisions.   The provisions expressly state: "any dispute or grievance regarding overtime, meal periods, rest periods or any other subject matter covered by any and all wage orders issued by the state of California including Industrial Wage Order 16-2001 . . . will be, processed under and in accordance with the dispute and grievance procedure set forth in the collective

---

[1] Neal J. Fialkow represented plaintiffs in Herrera and represents Plaintiff here.

1  bargaining agreement between the parties." (Wilson Dec., Ex. 1 at 4.)

2          Consistent with the United States Supreme Court's ruling in 14 Penn Plaza

3  LLC v. Pyett, 556 U.S. 247 (2009), there was a "clear and unmistakable"

4  agreement to grieve and arbitrate Plaintiff's claims.  Indeed, the CBA specifically

5  provides that it includes claims regarding meal periods, rest periods and any other

6  subject mattered covered by the wage orders.  As all of the claims brought by

7  Plaintiff in his First Amended Complaint ("FAC") are subject to the mandatory

8  dispute resolution process, and as it is undisputed that Plaintiff did not grieve and

9  arbitrate his claims, the Court should dismiss this lawsuit.[2]

10  **II.    STATEMENT OF FACTS**

11          **A.    Brinderson Is Engaged In Interstate Commerce.**

12          Brinderson is engaged in interstate commerce.  Brinderson provides

13  engineering, procurement, construction, maintenance and turnaround services to a

14  broad range of energy related industries, including upstream oil and gas

15  production, gas processing, oil refining, terminals and pipelines and chemicals.

16  (Wilson Dec., ¶ 2.)  Among other things, Brinderson provides both routine

17  maintenance and significant turnaround services for major refineries that supply oil

18  and gas in various states throughout the western United States.  (Id.)  For instance,

19  Brinderson repairs and retrofits oil refineries during scheduled or emergency

20  shutdowns.  (Id.)  Brinderson also provides construction services for gas pipelines

21  and oil refineries including constructing new facilities and improvements to

22  existing facilities.  (Id.) It also provides engineering, construction and maintenance

23  services for companies engaged in the exploration and extraction of oil.

24  Brinderson has a broad client base that includes major oil companies.  (Id.)

25          **B.    Plaintiff's Employment Was Governed By A CBA.**

26          Plaintiff began his employment as a safety watch with Brinderson in January

27

28  [2] For the convenience of the Court, Defendants have included a copy of the FAC as
Exhibit A to their Request for Judicial Notice filed simultaneously herewith.

2013. (Wilson Dec., ¶ 3.)[3]  Plaintiff was never employed by Brinderson, L.P., which is a sister company of Brinderson.  (Wilson Dec., ¶ 4.)  Plaintiff's employment with Brinderson was brief, ending on or about February 17, 2013. (RJN, Ex. A.)

The USW represents employees of Brinderson employed in the State of California working in various job classifications, including safety watch, laborer, fire watch, certified welder, construction clerk, craft helper and more than 30 other job classifications. (Wilson Dec., ¶ 6, Ex. 1 at 1, Section 1 and Appendix A.)  The terms and conditions of Plaintiff's employment were governed by the CBA entered into between Brinderson and the USW that was effective in June 2010. (Id.)  As part of his new hire checklist dated December 19, 2012, Plaintiff acknowledged that he received his union card. (Wilson Dec., ¶ 9, Ex. 2.)  Plaintiff also signed a payroll deduction authorization of union dues. (Wilson Dec., ¶ 9, Ex. 3.)

## C.   **The CBA Contains Mandatory Grievance And Arbitration Provisions That Include Plaintiff's Claims Herein.**

The CBA governing the terms and conditions of Plaintiff's employment contains comprehensive dispute resolution provisions. (Wilson Dec., ¶ 8, Ex. 1 at 5-6.)  The dispute resolution provisions provide, among other things, that employees must first attempt to resolve disputes with their supervisors within ten days. (Id.)  If that does not resolve the issue, the USW and Brinderson will meet to resolve the issue within ten days. (Id.)  If the issue remains unresolved, written notice of the grievances must be filed with the "standing committee," initially comprised of the two chairmen of the negotiating committee who negotiated the CBA. (Id.)  The standing committee must attempt to reach a settlement within one month. (Id.)  If there is a deadlock among the standing committee, the matter must be referred to arbitration. (Id.)  The matter may then be submitted to the Federal

---

[3]Brinderson and Brinderson, L.P. are collectively referred to herein as "Defendants."

1    Mediation and Conciliation Service, the American Arbitration Association, or an

2    impartial arbitrator who is mutually agreed upon.  (Id.)

3         There can be no question that the CBA governs claims regarding wages,

4    meal periods and rest periods as Article IV of the CBA expressly states,

5            The parties hereby acknowledge that it has always been
             understood and agreed between the parties that any
6            dispute or grievance regarding <u>overtime, meal periods,</u>
             <u>rest periods or any other subject matter covered by any</u>
7            <u>and all wage orders issued by the state of California</u>
             <u>including Industrial Wage Order 16-2001</u>, which covers
8            on-site occupations in the construction, mining, drilling
             and logging industries, has been, and will be, processed
9            under and in accordance with the dispute and grievance
             procedure set forth in the collective bargaining agreement
10           between the parties.

11   (Id. ¶ 8, Ex. 1 at 4) (emphasis added).

12       **D.   <u>Plaintiff Did Not Grieve Or Arbitrate His Claims Prior</u>**
             **<u>To Filing This Action.</u>**
13

14        On December 30, 2013, Plaintiff filed the instant action.  On January 31,

15   2014, he filed his FAC.  In this action, Plaintiff has brought claims for failure to

16   provide meal and rest periods, failure to pay at least minimum wage for attending

17   trainings and meetings, failure to provide accurate itemized wage statements,

18   waiting time penalties and violation of <u>Bus. & Prof. Code § 17200 et seq</u>.  He has

19   brought these claims against Brinderson and its sister company, Brinderson L.P.

20   Plaintiff does not allege that he grieved and arbitrated his claims.  (RJN, Ex. A.)

21        Indeed, Plaintiff never grieved and arbitrated any claims.  (Wilson Dec.,

22   ¶ 10.)  Brinderson has no records of Plaintiff attempting to resolve any dispute with

23   his supervisor, of USW raising Plaintiff's disputes with Brinderson, of a written

24   notice of grievance being submitted to the standing committee, of a deadlock

25   among the standing committee, or of the matter being submitted to arbitration.

26   (Wilson Dec., ¶ 10.)

27   ///

28   ///

FIRM:26059904v2

III.   **ARGUMENT**

    A.    **The Action Should Be Dismissed Because Plaintiff Failed To Grieve And Arbitrate His Claims.**

        1.    **The Law Favors Enforcement Of Collectively Bargained Agreements To Arbitrate Individual Worker Disputes.**

By filing the instant action, Plaintiff has attempted to circumvent or disavow the comprehensive dispute resolution provisions of the CBA negotiated by the USW.  He may not do so.

In 14 Penn Plaza, the United States Supreme Court recognized the broad authority of a labor union to agree to arbitration on behalf of its bargaining unit members:  "As in any contractual negotiation, a union may agree to the inclusion of an arbitration provision in a collective-bargaining agreement in return for other concessions from the employer.   Courts generally may not interfere in this bargained-for exchange."  14 Penn Plaza, 556 U.S. at 257.  The Court added, "[n]othing in the law suggests a distinction between ... arbitration agreements signed by an individual employee and those agreed to by a union representative." Id. at 258.

14 Penn Plaza's recognition of broad union authority to agree to the arbitration of individual employee claims reflects federal labor policy, which "strongly favors the resolution of labor disputes through arbitration." United Food & Commercial Workers v. Foster Poultry, 74 F.3d 169, 173 (9th Cir. 1995).  The California Supreme Court has likewise observed, "[o]ur own state policy favors arbitration provisions in collective bargaining agreements, and recognizes the important part that they play in helping to promote industrial stabilization." Posner v. Grunwald-Marx, Inc., 56 Cal.2d 169, 180 (1961); accord, Plumbing, Heating Etc. Council v. Howard, 53 Cal.App.3d 828, 833-34 (1975) ("There is a strong policy on both the national and state levels favoring ... resolution of labor disputes via grievance-arbitration procedures.")

The fact that Plaintiff has raised statutory claims in his Complaint does not

FIRM:26059904v2

affect the strong preference for arbitration pursuant to CBAs. 14 Penn Plaza, 556 U.S. at 257; see also California Correctional Peace Officers Assn. v. State of California, 142 Cal.App.4th 198, 210 (2006) ("[T]he body of case law governing arbitration has recognized repeatedly that arbitrators may be presented with issues of statutory interpretation and are entitled to resolve those issues - at least in the first instance.")   The only limiting condition is that the commitment to arbitrate statutory claims must be "clear and unmistakable." 14 Penn Plaza, 556 U.S. at 272, 274; Wright v. Universal Maritime Service Corp., 525 U.S. 70, 80 (1998); Vasquez v. Superior Court, 80 Cal.App.4th 430, 434–435 (2000).   As discussed below, the obligation to grieve and arbitrate is "clear and unmistakable" here, where Brinderson and the USW not only agreed to grieve and arbitrate statutory claims, but included language reiterating that it has always been their intent to grieve and arbitrate such claims.

As the courts have explained, the fact that a claim must be arbitrated does not result in a loss of any substantive rights.  "By agreeing to arbitrate a statutory claim, a party does not forgo the substantive rights afforded by the statute; it only submits to their resolution in an arbitral; rather than a judicial, forum." Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 628 (1985); see also 14 Penn Plaza, 556 U.S. at 265-66 (same).  As the United States Supreme Court has further explained, "we are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." Mitsubishi Motors, 473 U.S. at 626-627; accord, 14 Penn Plaza, 556 U.S. at 266 (emphasizing the legitimate role of arbitration for statutory claims under a collective bargaining agreement).

The strong preference for enforcement of collectively bargained arbitration requires that Plaintiff's claims be dismissed because he has failed to grieve and arbitrate them.

1

2

3

2. **Plaintiff Cannot Satisfy His Burden To Demonstrate That The Mandatory Grievance And Arbitration Provisions Of The CBA Do Not Extend To The Claims He Has Attempted To Raise Herein.**

4    Where, as here, a plaintiff has filed suit despite collectively bargained

5  arbitration provisions and thereafter seeks to escape compliance with those

6  provisions, he has an exceedingly heavy burden to carry.  It is one Plaintiff cannot

7  shoulder.

8    "[I]n assessing whether an arbitration agreement or clause is enforceable, the

9  Court should apply ordinary state-law principles that govern the formation of

10  contracts."  Cox v. Ocean View Hotel Corp., 533 F.3d 1114, 1121 (9th Cir. 2008).

11  Under California law, the scope of arbitration agreements must be liberally

12  construed, and any doubts are to be resolved in favor of arbitration:

13

14

15

> Doubts as to whether an arbitration clause applies to a particular dispute are to be resolved in favor of sending the parties to arbitration.  The court should order them to arbitrate unless it is clear that the arbitration clause cannot be interpreted to cover the dispute.

16  Cione v. Foresters Equity Servs., 58 Cal.App.4th 625, 642 (1997) (emphasis

17  added); see also Posner v. Gunwald Marx, Inc., 56 Cal.2d 169, 183-84 (1961)

18  (explaining that contractual provisions to arbitrate are to be liberally construed).

19    "A party to a collective bargaining agreement containing an express

20  grievance and arbitration mechanism can bypass arbitration only if it can be said

21  'with positive assurance' [that] the clause is not susceptible to an interpretation that

22  covers the asserted dispute."  Service Employees Internat. Union, Local 1000 v.

23  Department of Personnel Admin., 142 Cal.App.4th 866, 870 (2006).  The burden is

24  on the party opposing arbitration to demonstrate that an arbitration clause cannot

25  be interpreted to require arbitration of the dispute.  This burden is substantial.

26  Buckhorn v. St. Jude Heritage Medical Group, 121 Cal.App.4th 1401, 1406

27  (2004).

28    Plaintiff cannot satisfy this burden here.  The dispute resolution provisions

1    of the CBA expressly extend to "any dispute or grievance regarding overtime, meal

2    periods, rest periods or any other subject matter covered by any and all wage

3    orders issued by the State of California."  (Wilson Dec., ¶ 7.)  Not only do the

4    provisions expressly include meal and rest periods, but the requirement to provide

5    meal periods and rest periods is a subject matter covered by Industrial Welfare

6    Commission ("IWC") Wage Order No. 16-2001 in paragraphs 10 and 11, which is

7    incorporated by reference in the grievance and arbitration provision of the CBA.

8    (RJN, Ex. B.)  Plainly, Plaintiff's claims in his FAC that he was not provided meal

9    and rest periods fall squarely within the scope of the grievance and arbitration

10   procedures as they are expressly identified in the CBA and as they are a "subject

11   matter" of IWC Wage Order No. 16-2001.

12        Likewise, paragraph 4 of IWC Wage Order No. 16-2001 addresses the

13   requirement to pay at least the applicable minimum wage on the established

14   payday for each pay period.  Id.  ("Every employer shall pay to each employee, on

15   the established payday for the period involved, not less than the applicable

16   minimum wage for all hours worked in the payroll period….")  Thus, Plaintiff's

17   claim that he was not paid at least minimum wage for attending meetings is

18   covered by the mandatory grievance and arbitration provision as it is a "subject

19   matter" expressly covered by the applicable wage order, which is incorporated by

20   reference in the CBA.

21        In addition, paragraph 6(b) of Wage Order 16-2001 describes the

22   requirement to provide proper wage statements in compliance with Labor Code

23   § 226(a).  Id.  Thus, Plaintiff's claim for failure to provide proper wage statements

24   is also a "subject matter" expressly covered by the applicable wage order, which is

25   incorporated by reference in the CBA.

26        As described below, Plaintiff's remaining claims are derivative of his claims

27   that he was denied meal and rest periods and that he was not paid minimum wage

28   for attending training and meetings.   Thus, they all had to be grieved and

1   arbitrated.  Plaintiff did not do so.

2   **3.     The CBA Establishes A "Clear and Unmistakable"**
3   **Agreement To Grieve And Arbitrate The Claims In This**
    **Action.**

4         A collectively bargained agreement to arbitrate statutory claims must be

5   enforced where it is "clear and unmistakable."  Wright,  525 U.S. at 80.  That is the

6   case here.

7         As discussed above, the CBA expressly provides that it has "always" been

8   the parties' intent that "any dispute or grievance regarding overtime, meal periods,

9   rest periods or any other subject matter covered by any and all wage orders issued

10  by the state of California including Industrial Wage Order 16-2001… will be[]

11  processed under an in accordance with the dispute and grievance procedure set

12  forth in the collective bargaining agreement between the parties."  (Wilson Dec.,

13  ¶ 8.)  Each of Plaintiff's claims fall within this clear and unmistakable provision.

14        Plaintiff alleges in his first cause of action that he was not paid on a timely

15  basis pursuant to Labor Code § 204 because he was not paid for all time worked

16  including attending training and meetings.  (RJN, Ex. A, ¶ 19.)  The requirement to

17  "pay each employee, on the established payday for the period involved, not less

18  than the applicable minimum wage for all hours worked in the payroll period" is a

19  subject matter expressly covered by paragraph 4(B) of IWC Wage Order No. 16-

20  2001, which is incorporated by reference in the grievance and arbitration provision

21  of the CBA.  In addition, this claim is a derivative claim to Plaintiff's second cause

22  of action.  Accordingly, Plaintiff's first cause of action – and the corresponding

23  portion of Plaintiff's sixth cause of action – had to be grieved and arbitrated.[4]  He

24  did not do so.

25

26  ────────────────

27  [4]Plaintiff alleges in his third cause of action that he was not paid all wages due
    when he was discharged.  Although Plaintiff does not identify any specific facts to
    support this claim, it appears that this claim is a derivative claim to his allegation
28  that he was not paid for attending training and meetings or that he was not
    provided meal and rest periods.  As such, this claim would be a derivative claim to

Likewise, Plaintiff alleges in his second cause of action that he was not paid at least the minimum wage for attending training and meetings.  (Id., ¶¶ 21-24.) Plaintiff also alleges that this is an unfair business practice in his sixth cause of action.  (Id., ¶ 43(b).)  The requirement to pay minimum wage is one of the subjects explicitly covered by paragraph 4 of IWC Wage Order No. 16-2001, which is incorporated by reference in the CBA.  Accordingly, Plaintiff's second cause of action – and the corresponding portion of Plaintiff's sixth cause of action – had to be grieved and arbitrated.  He did not do so.

There also can be no question that Plaintiff's claims that he was not provided with meal and rest periods in accordance with the Labor Code and "the applicable wage order" are governed by the mandatory grievance and arbitration provision. (Id., ¶¶ 29-35, 43(d).)  Not only are meal and rest periods subjects of IWC Wage Order No. 16-2001, but they are expressly identified in the CBA as being subject to the mandatory grievance and arbitration provision.   Thus, Plaintiff's fourth cause of action – and the corresponding portion of Plaintiff's sixth cause of action – had to be grieved and arbitrated.  He did not do so.

Plaintiff alleges in his fifth cause of action that he was not provided with proper wage statements.  (Id., ¶¶ 36-40.)  Plaintiff also alleges that this is an unfair business practice in his sixth cause of action.  (Id., ¶ 43(e).)  The requirement to provide proper wage statements is the subject of paragraph 6(B) of IWC Wage Order No. 16-2001, which is incorporated by reference in the CBA.  Accordingly, Plaintiff's fifth cause of action – and the corresponding portion of Plaintiff's sixth cause of action – had to grieved and arbitrated.  Plaintiff did not do so.

### 4. Labor Code § 229 Supports Requiring Plaintiff To Grieve And Arbitrate His Claims.

Based upon statements made by Plaintiff's counsel when this action was in

---

Plaintiff's second and fourth causes of action and would also be subject to the mandatory grievance and arbitration provision.

FIRM:26059904v2

1   state court, Defendants anticipate Plaintiff will contend that Labor Code § 229
2   prevents enforcement of the CBA's grievance and arbitration provision here.  Such
3   an argument fails for numerous reasons.

4        To start, although Labor Code § 229 permits employees to maintain claims
5   for unpaid wages despite any contractual duty to arbitrate, it expressly excludes
6   CBAs.  Id.  ("This section shall not apply to claims involving any dispute
7   concerning the interpretation or application of any collective bargaining agreement
8   containing such an arbitration agreement.")  In short, "the Legislature in enacting
9   section 229 sought to encourage the resolution of labor disputes covered by
10  collective bargaining agreements via arbitration-grievance procedures contained
11  therein…"  Howard, 53 Cal.App.3d at 834.  Thus, Section 229 confirms that
12  California law favors the arbitration of statutory wage claims under CBAs.

13       Even were that not the case, Section 229 still would not apply because
14  Brinderson is engaged in interstate commerce.  (Wilson Dec., ¶ 2.)[5]  As such, the
15  Federal Arbitration Act, 9 U.S.C. § 1 et seq., ("FAA") governs this matter.  Allied-
16  Bruce Terminix Companies, Inc. v. Dobson, 513 U.S. 265, 277 (1995); McManus
17  v. CIBC World Markets Corp., 109 Cal.App.4th 76, 85-86 (2004).  And the FAA
18  preempts Labor Code § 229.  Perry v. Thomas, 482 U.S. 483, 490-91 (1987)
19  (explaining that California Labor Code § 229, restricting arbitration of wage
20  disputes, is preempted and invalidated by the FAA).  Thus, even if Labor Code
21  § 229 did not expressly carve out an exception for arbitration pursuant to the terms
22  of collective bargaining agreements, Labor Code § 229 would still not apply here.

23       Finally, even if Labor Code § 229 extended to CBAs and was not preempted
24  by the FAA, Labor Code § 229 only applies to "actions to enforce the provisions of
25  this article for the collection of due and unpaid wages."  Labor Code § 229.  Only

26  _____
27  [5]It is well established that employees who perform maintenance, repair or
improvement of existing instrumentalities of commerce including pipe lines are
involved in interstate commerce.  See e.g., 29 CFR § 776.11; F. Fitzgerald Constr.
28  Co. v. Pedersen, 324 U.S. 720, 724 (1945) (explaining that the repair of
instrumentalities of commerce involves interstate commerce).

Plaintiff's third cause of action asserts a claim under Sections 200 through 244 of the Labor Code for unpaid wages.   Although Plaintiff's first cause of action (missed meal periods), second cause of action (missed rest periods) and fourth cause of action (waiting time penalties) refer to various sections within Article 1 of Part 1 and Chapter 1 of the Labor Code, they are not actions to collect "due and unpaid wages."   See Lane v. Francis Capital Management, 224 Cal.App.4th 676, 684 (2014) (holding that claims for meal and rest period premiums and waiting time penalties are not actions for due and unpaid wages); citing Kirby v. Immoos Fire Protection, Inc., 53 Cal.4th 1244, 1256 (2012) ("[A] section 226.7 claim is not an action brought for   nonpayment of wages; it is an action brought for nonprovision of meal or rest breaks.")   Likewise, Plaintiff's fifth cause of action (unfair competition) does not assert claims under Sections 200 through 244 of the Labor Code.   Lane 224 Cal.App.4th at 684 (holding that Labor Code § 229 does not apply to claims for unfair competition brought pursuant to Bus. & Prof. Code § 17200 et seq.)

For all of these reasons, any argument that Labor Code § 229 permits Plaintiff to sue rather than grieve and arbitrate would be entirely unavailing.

**5.    Any Argument That The CBA Is Contrary To State Public Policy Is Unavailing.**

Defendants anticipate that Plaintiff will argue that even if grievance and arbitration are required by the "clear and unmistakable" provisions in the CBA, those provisions are unenforceable because the attendant dispute resolution procedures are contrary to state public policy.  However, no such state policy would apply in this case.  Rather, because the arbitration at issue would arise from a CBA in interstate commerce, the validity of any of its procedures is governed by federal law under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a).  Dryer v. Los Angeles Rams, 40 Cal.3d 406, 411 (1985) ("federal law governs the enforcement of arbitration provisions in contracts involving

12

1    interstate commerce . . . and section 301(a) authorizes enforcement of a promise to

2    arbitrate in a collective bargaining agreement.")  And, unlike under state law, "the

3    judicial role in considering a motion to compel arbitration is … quite limited" under

4    the LMRA.  (Id. at p. 413.)

5           While state courts may enjoy concurrent jurisdiction in disputes over

6    collectively bargained arbitration provisions, they must apply federal law in light of

7    the overriding national labor policy.  Warehouse, Processing Etc. Union v. Hugo

8    Neu Proler Co., 65 Cal.App.4th 732, 737 (1988) (explaining that state courts must

9    "apply federal law" to questions under LMRA section 301).  State courts "may look

10   to state law for guidance, but only if it effectuates the policies underlying federal

11   labor legislation." Dryer, 40 Cal.3d at 411-412.  "[I]ncompatible doctrines of local

12   law must give way." Id. at 411; accord, Textile Workers v. Lincoln Mills, 353 U.S.

13   448, 456 (1957) (explaining federal law applies where section 301 governs, and

14   courts "must fashion [this law] from the policy of our national labor laws").[6]

15          "To effectuate [national labor] policy," federal law limits a "court's inquiry

16   to a few basic questions concerning arbitrability of the dispute and defenses, if any,

17   based on allegations of a [union's] lack of fair representation." Dryer, 40 Cal.3d at

18   413.  In other words, absent a labor union's breach of its narrow duty of fair

19   representation to its employees, arbitration must be ordered if the collective

20   bargaining agreement so requires.  Id. at 411-412 (explaining that where, as here,

21   the union is not alleged to have breached its duty of fair representation, a court's

22   "function is essentially ended 'once it has found the collective bargaining

23   agreement susceptible of an interpretation which would cover the dispute'"); see

24   also Vaca v. Sipes, 386 U.S. 171, 190 (1967) (explaining that a labor union

25

26   ---
     [6]Whether the defense of compulsory arbitration provides a basis for removal to
     federal court under the "well-pleaded complaint" rule is a separate matter not at
27   issue here.   Caterpillar Inc. v. Williams, 482 U.S. 386, 398-399 (1987)
     (distinguishing question of removal based on plaintiff's complaint from the
28   presence of federal defenses, including those based on Section 301, in state-court
     proceedings).

FIRM:26059904v2

1   breaches its duty of fair representation only where its "conduct toward a member
2   of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.")

3       When analyzing arbitration provisions under a collective bargaining
4   agreement, courts "do not consider the substance of the grieving party's claims,
5   nor do they scrutinize the agreed-upon arbitration procedures for general fairness."
6   Dryer, 40 Cal.3d at 414.  Whether arbitration procedures would be unconscionable
7   under state law or comport with state public policy is therefore of no moment.  Id.
8   at 415-417 (refusing to apply California unconscionability doctrine to LMRA-
9   governed arbitration); accord, Knight et al., Cal. Practice Guide; Alternative
10  Dispute Resolution (The Rutter Group 2014) ¶ 5:159, pp. 5-118 ("[a]rbitration
11  provisions in collective bargaining agreements are not subject to state law
12  'unconscionability' limitations").  Where the LMRA applies, "courts generally
13  order arbitration despite objections concerning the arbitration procedures."  Dryer,
14  40 Cal.3d at 414.  It makes no difference whether the process is "employee-
15  oriented" or even if a "partisan" arbitrator is used.  (Id.)

16      The fact that a labor union operates by majority rule does not invalidate its
17  determination to agree to arbitrate individual statutory claims.  See 14 Penn Plaza,
18  556 U.S. at 270 ("Labor unions certainly balance the economic interests of some
19  employees against the needs of the larger work force as they negotiate collective-
20  bargain[ing] agreements . . . .  But this attribute of organized labor does not justify
21  singling out an arbitration provision for disfavored treatment.")  To the contrary,
22  "[t]he ordering and adjusting of competing interests through a process of free and
23  voluntary collective bargaining is the keystone of the federal scheme to promote
24  industrial peace."  Local 174, Teamsters, Etc. v. Lucas Flour Co., 369 U.S. 95, 104
25  (1962).  "State law which frustrates the effort of Congress to stimulate the smooth
26  functioning of that process thus strikes at the very core of federal labor policy."  Id.
27  This is precisely why Section 301 of the LMRA requires that "federal labor law
28  must be paramount" in cases, like the one here, governed by that statute.  Id. at

FIRM:26059904v2

1   103.  Were it otherwise, contracts could have a different meaning under federal law
2   and state law, which "would inevitably exert a disruptive influence upon both the
3   negotiation and administration of collective agreements." Id. at 103-104.

4          Here, Plaintiff does not claim that his duly-elected labor union failed to
5   fairly represent his interests.  Thus, Plaintiff has not identified any issues to
6   overcome the dominant and governing federal rule that the refusal to enforce an
7   arbitration agreement based upon an inquiry into its procedures "would frustrate
8   rather than further the goals of national labor policy." Dryer, 40 Cal.3d at 415.

9          **6.      The Grievance And Arbitration Provision Extends To**
10             **Brinderson, L.P.**

11          Although Plaintiff was only employed by Brinderson, he has also sued its
12  sister company Brinderson, L.P.  Defendants anticipate that Plaintiff will argue that
13  by suing an additional entity, Plaintiff may escape the grievance and arbitration
14  provision of the CBA.  Plaintiff is, of course, mistaken.  Were an employee able to
15  escape the grievance and arbitration provisions of a CBA just by including another
16  entity in his lawsuit, the arbitration provisions would be rendered meaningless.

17         Although Brinderson, L.P. is not a signatory to the CBA, it is also entitled to
18  the benefit of the arbitration agreement.  "It is well established that a nonsignatory
19  beneficiary of an arbitration clause is entitled to require arbitration." Harris v.
20  Superior Court, 188 Cal.App.3d 475, 478 (1986); see also 24 Hour Fitness, Inc. v.
21  Superior Court, 66 Cal.App.4th 1199, 1210 (1998); Boucher v. Alliance Title Co.,
22  Inc., 127 Cal.App.4th 262, 271 (2005) ("under both federal and California
23  decisional authority, a nonsignatory defendant may invoke an arbitration clause to
24  compel a signatory plaintiff to arbitrate its claims when the causes of action against
25  the nonsignatory are 'intimately founded in and intertwined' with the underlying
26  contract obligations."); Ronay Family Limited Partnership v. Tweed, 216
27  Cal.App.4th 830, 838-39 (2013).

28         Throughout the FAC, Plaintiff refers to Brinderson and Brinderson, L.P.

collectively as "Defendants."  Plaintiff makes no distinction between them.  And all of the alleged conduct arises out of Plaintiff's employment with Brinderson.  As such, Brinderson, L.P. is a beneficiary of the dispute resolution process in the CBA.  As with his claims against Brinderson, Plaintiff must grieve and arbitrate his claims against Brinderson, L.P.

## B.    The FAC Must Be Dismissed.

Because Plaintiff's claims fall within the dispute resolution provisions of the CBA, he was required to grieve and arbitrate them.  He may not circumvent the enforceable dispute resolution provisions of the CBA by pursuing claims in court. See DelCostello v. Int'l Board of Teamsters, 462 U.S. 151, 163 (1983) ("[A]n employee is required to attempt to exhaust any grievance or arbitration remedies provided in the collective bargaining agreement.  Subject to very limited judicial review, he will be bound by the result according to the finality provisions of the agreement."); United Paperworkers Int'l. Union, AFL–CIO v. Misco, Inc., 484 U.S. 29, 37 (1987) ("where the [CBA] provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute"); Cone v. Union Oil Co. of Cal., 129 Cal.App.2d 558, 563 (1954) ("a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust these internal remedies before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies."); Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 563 (1976) (an employee may not "sidestep the grievance machinery" provided in a CBA; "unless he attempted to utilize the contractual procedures for settling his dispute with his employer, his independent suit against the employer in the District Court would be dismissed"); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 981, 986 (9th Cir. 2007) (finding that "employee's failure to exhaust contractually mandated procedures [that required the employee file a claim with

the Union within ten days after discovery of the claim] precludes judicial relief"); Carr v. Pacific Maritime Ass'n, 904 F.2d 1313, 1317 (9th Cir. 1990) ("Failure to utilize the grievance procedures, or to invoke them in a timely manner, bars grievants from pursuing remedies in court."); Sparling v. Hoffman Constr. Co., 864 F.2d 635, 638 (9th Cir. 1988); Quevedo v. Macy's Inc., 798 F.Supp.2d 1122, 1143 (C.D. Cal. 2011).

As Plaintiff did not grieve and arbitrate his claims as he was required to do, his claims should be dismissed – just as the Court did just weeks ago in Herrera, Case No. 5:14-cv-00776-MWF-VBM (RJN, Ex. E). See also KKE Architects, Inc. v. Diamond Ridge Development, LLC, 2008 U.S. Dist. LEXIS 17127, *14 (C.D. Cal. 2008) (having found an enforceable arbitration agreement, court may dismiss the judicial action); Thinket Ink Info. Resources, Inc. v. Sun Microsystems, Inc., 368 F.3d 1053, 1060 (9th Cir. 2004) (dismissing plaintiffs' claims that were subject to an arbitration agreement); Lewis v. UBS Fin. Serv., Inc., 818 F.Supp.2d 1161, 1165 (N.D. Cal. 2011) (courts have discretion under 9 U.S.C. § 3 to dismiss claims that are subject to an arbitration agreement); Quevedo, 798 F.Supp.2d at 1143 (C.D. Cal. 2011) (FAA does not "limit the court's authority to grant a dismissal" where the court requires a plaintiff "to submit all claims to arbitration . . . . Circuit law teaches that dismissal is proper even where the party who moves to compel arbitration only requests a stay pending arbitration"); Luna v. Kemira Specialty, Inc., 575 F.Supp.2d 1166, 1178 (C.D. Cal. 2008) (the court has discretion to dismiss under Rule 12(b)(6) if it finds that all of the claims before it are arbitrable).

To the extent Plaintiff should change this Court's authority to dismiss this action, both Fed.R.Civ.P. 12(b)(1) and 12(b)(6) support dismissal of Plaintiff's claims. Fed.R.Civ.P. 12(b)(1) provides, "Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required,

except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter. . . ."  As the courts have explained, Rule 12(b)(1) is a "flexible rule that 'often serves as a vehicle for raising various residual defenses,'" allowing parties to an arbitration agreement to enforce their agreements through the use of a motion to dismiss for lack of subject matter jurisdiction. Filimex, L.L.C., v. Novoa Investments, L.L.C., 2006 U.S. Dist. LEXIS 56039, at *6 (D. Az. July 17, 2006) (internal citation omitted).

In Swanson Restoration & Design, Inc. v. Paul Davis Restoration, Inc., 2007 U.S. Dist. LEXIS 96520 (C.D. Cal. 2007), after finding that the plaintiff's claims were subject to an arbitration agreement, the Court dismissed the Plaintiff's claims pursuant to Fed.R.Civ.P. 12(b)(1).  The Court explained, "When a court determines that the entirety of a dispute is subject to arbitration, the court lacks subject matter jurisdiction and dismissal of the complaint is proper [citations omitted]. The Court thus compels arbitration of the claims and dismisses Plaintiff's complaint without leave to amend." Id., at *15-16.  See also Akar v. Prescott Hotel, 2008 U.S. Dist. LEXIS 43066 (N.D. Cal. 2008) (court finds arbitration applicable and grants motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(1)); Choice Hotels Int'l., Inc. v. BSR Tropicana Resort, Inc., 252 F.3d. 707, 709-10 (4th Cir. 2001); Thompson v. Nienaber, 239 F.Supp.2d 478, 482-84 (D. N.J. 2002) (holding that a party may bring a motion to dismiss under Rule 12(b)(1) to enforce an arbitration agreement).

This Court may also dismiss Plaintiff's claims under Fed.R.Civ.P. 12(b)(6). When all claims made in the litigation are subject to arbitration, courts may also choose to dismiss the action in its entirety for the failure to state a claim under Rule 12(b)(6). Chappel v. Laboratory Corp. of America, 232 F.3d 719, 725 (9th Cir. 2000) (where "judicial review . . . is barred by the [contract's] valid and enforceable arbitration clause[,] [t]he district court properly dismissed his complaint under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim"); Sparling v. Hoffman Constr. Co., 864 F.2d at 638 (holding that sua sponte

1   dismissal for failure to state relief was proper even though defendant only sought a

2   stay pending arbitration); Luna v. Kemira Specialty, Inc., 575 F.Supp.2d at 1178-

3   1179 (citing additional authorities).

4            C.      **The Court Should Also Dismiss Plaintiff's PAGA Claims.**

5            In his FAC, Plaintiff has included a cause of action under the Private

6   Attorneys General Act ("PAGA").  Those claims must also be dismissed.

7            Plaintiff's PAGA claims are based on the same alleged events and alleged

8   Labor Code violations as the other claims that Plaintiff was required to grieve and

9   arbitrate.    Defendants anticipate that Plaintiff will contend that the recent

10  California Supreme Court decision in Iskanian v. CLS Transportation Los Angeles,

11  59 Cal.4th 348 (Cal. 2014) permits Plaintiff to proceed with his PAGA claims even

12  if he did not grieve and arbitrate his claims pursuant to the CBA.   Iskanian,

13  however, conflicts with federal decisions holding that PAGA claims are arbitrable

14  upon an individualized basis.    See, e.g., Quevedo, 798 F.Supp.2d 1122

15  (determining that PAGA claims are arbitrable, that a plaintiff can be required to

16  arbitrate PAGA claims on an individualized basis, and that the FAA preempts any

17  state effort to insulate a particular type of claim from arbitration); Luchini v.

18  CarMax, Inc., 2012 U.S. Dist. LEXIS 157253, *8 (E.D. Cal. 2012) (same).  As the

19  California Supreme Court's decision in Iskanian is based upon an analysis of

20  federal law, this Court is not bound by it.  See, e.g., UPS Ground Freight, Inc. v.

21  Farran, 2014 U.S. Dist. LEXIS 1473, *10 (S.D. Ohio 2014) (explaining that federal

22  court is not bound by state court decisions on issues of federal law); Commodities

23  Export Co. v. Detroit Int'l Bridge Co., 695 F.3d 518, 528 (6th Cir. 2012)

24  (explaining that a state court's opinion on an issue of federal law "is entitled to no

25  deference whatsoever"); Vandevere v. Lloyd, 644 F.3d 957, 964 (9th Cir. 2011)

26  ("As to a question of federal law . . . we owe no deference to state courts").

27  Accordingly, Plaintiff's PAGA claims must also be dismissed based on his failure

28  to grieve and arbitrate.

### D.     <u>Plaintiff's Anticipated Request To Conduct Discovery Must Be Denied.</u>

Defendants anticipate that Plaintiff will request that he be permitted to conduct discovery in order to respond to the instant motion.  Not only is there no basis for such a request, but Plaintiff made the same request in state court when Defendants filed a similar motion there under state court rules.  (RJN, Ex. D.)  (That motion was not ruled on as Defendants removed this action prior to the hearing.)  During the case management conference on May 2, 2014, the Superior Court in fact ruled that the parties could conduct limited discovery regarding the arbitration agreement in connection with Defendant's motion. (RJN Ex. C.)  Thus, <u>Plaintiff had more than two full months to conduct discovery before Defendants removed this case on July 15, 2014.</u>  Any request that he be permitted to conduct more discovery now must be rejected.

## IV.    CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss this action.

DATED:  August 8, 2014     By:     EPSTEIN BECKER & GREEN, P.C.


  /S/ Michael S. Kun
Michael S. Kun
Aaron Olsen
Attorneys for Defendants
BRINDERSON CONSTRUCTORS, INC.
and BRINDERSON. L.P.