MAIAVA, ET AL. V. BRINDERSON
CONSTRUCTORS, INC., ET AL.

Case No. 2:14-cv-05514 BRO (AJWx)

# EXHIBIT 1

# TO DECLARATION OF GARY WILSON

COLLECTIVE BARGAINING AGREEMENT

Between

BRINDERSON CONSTRUCTORS, INC.

And

UNITED STEEL, PAPER AND FORESTRY, RUBBER,
MANUFACTURING, ENERGY, ALLIED INDUSTRIAL AND SERVICE
WORKERS INTERNATIONAL UNION ON BEHALF OF
INTERNATIONAL UNION OF PETROLEUM AND INDUSTRIAL
WORKERS - UNITED STEEL WORKERS, LOCAL 1945

Effective dates:

June 1, 2010 to May 31, 2013

004845.00041/1528889v1

BRIN-CON-00000128

Exhibit 1, Page 5

# TABLE OF CONTENTS

Page

ARTICLE I      RECOGNITION, SCOPE OF AGREEMENT AND UNION
               SECURITY ................................................................................ 1
   Section 1.    Recognition and Scope: ....................................................... 1
   Section 2.    Union Membership: .............................................................. 1
   Section 3.    Removals from Employment: ................................................ 1
   Section 4.    Check Off: ............................................................................ 2

ARTICLE II     MINIMUM DAY GUARANTEE ................................................ 2
   Section 1.    Reporting Pay: ...................................................................... 2
   Section 2.    Travel Time: .......................................................................... 2

ARTICLE III    HOURS AND OVERTIME .......................................................... 2
   Section 1.    Overtime Pay: ........................................................................ 2
   Section 2.    Work Period: .......................................................................... 3

ARTICLE IV     REST AND MEAL PERIODS ..................................................... 4

ARTICLE V      GRIEVANCE AND ARBITRATION ........................................... 5
   Section 1.    Procedure: ............................................................................. 5
   Section 2.    Limitation: ............................................................................ 7
   Section 3.    Discharge or Suspension: ..................................................... 7
   Section 4.    Warning Notices: .................................................................. 8

ARTICLE VI     PROBATIONARY EMPLOYEES ................................................ 8

ARTICLE VII    NO STRIKE - NO LOCKOUT .................................................... 8

ARTICLE VIII   WORK ASSIGNMENT ................................................................ 9

ARTICLE IX     DISCHARGE AND APPEAL ...................................................... 9

ARTICLE X      LEAVES OF ABSENCE .............................................................. 9

BRIN-CON-00000129

Exhibit 1, Page 6

## TABLE OF CONTENTS
### (Continued)

Page

Section 1.    Union Leave of Absence: ................................................................. 9
Section 2.    Leave of Absence: ........................................................................... 9

ARTICLE XI    UNION VISITATION RIGHTS .................................................. 10

ARTICLE XII    UNION BULLETIN BOARD ..................................................... 10

ARTICLE XIII    COMPANY RULES ..................................................................... 10

ARTICLE XIV    TIME SHEETS - PAY PERIODS AND PAY DAYS ..................... 11
Section 1.    Pay Periods: ................................................................................... 11
Section 2.    Pay Days: ....................................................................................... 11
Section 3.    Paycheck Items: ........................................................................... 11

ARTICLE XV    EXAMINATION AND IDENTIFICATION FEES ........................ 11
Section 1.    Examination Fee: .......................................................................... 11
Section 2.    Examination Methods: ................................................................... 11
Section 3.    Examination Disagreement: .......................................................... 12
Section 4.    Employee Identification: ............................................................... 12

ARTICLE XVI    SUBSTANCE ABUSE POLICY & PROGRAM ........................... 12
Section 1.    Substance Abuse Policy ................................................................ 12
Section 2.    Substance Abuse Program ............................................................ 13
Section 3.    Test Results ................................................................................... 13

ARTICLE XVII    SAFETY COMMITTEE ................................................................ 13

ARTICLE XVIII    SEVERABILITY CLAUSE ........................................................ 14

ARTICLE XIX    WAGES ...................................................................................... 14

ARTICLE XX    COMPANY HEALTH INSURANCE PROGRAM ..................... 14

ARTICLE XXI    ALTERNATIVE DISPUTE RESOLUTION ................................ 14

004845.00041/1528889v1

BRIN-CON-00000130

Exhibit 1, Page 7

## TABLE OF CONTENTS
### (Continued)

|  | Page |
|---|---|
| ARTICLE XXII  APPRENTICESHIP PROGRAM | 14 |
| ARTICLE XXIII MANAGEMENT RIGHTS | 15 |
| ARTICLE XXIV EQUAL OPPORTUNITY EMPLOYMENT | 15 |
| ARTICLE XXV 401 K PLAN | 16 |
| ARTICLE XXVI SENIORITY | 17 |
| ARTICLE XXVII TERM OF AGREEMENT | 17 |
| Section 1.    Term: | 17 |

004845.00041/1528889v1

BRIN-CON-00000131

Exhibit 1, Page 8

## SCOPE OF AGREEMENT

This Collective Bargaining Agreement, made and entered into by and between BRINDERSON CONSTRUCTORS, INC., hereinafter referred to as the "Company" and the United Steel, Paper And Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union on Behalf of International Union of Petroleum and Industrial Workers - United Steel Workers, Local 1945, hereinafter referred to as the "Union" shall cover the field operations of the Company in the State of California for those classifications of work and rates of pay as outlined in Appendix A.  The effective date of this Agreement shall be June 1, 2010.

### ARTICLE I

### RECOGNITION, SCOPE OF AGREEMENT AND UNION SECURITY

Section 1.    Recognition and Scope:

This Agreement shall apply to all employees of the Company employed in the State of California working in the classifications described in Appendix A.  The Company hereby recognizes the Union, as the sole Collective Bargaining Agent and Representative of all such employees as covered by this Agreement.  The parties agree that the Union does not represent, and this Agreement does not cover any other employees, including office clerical employees, supervisors, management employees, engineers, salesmen, draftsmen, warehousemen, guards, or superintendents as defined in the National Labor Relations Act.

The purpose of this Agreement is to provide rates of pay, hours of service and working conditions of the employees when working in the State of California at the job classifications listed in Appendix A.

Section 2.    Union Membership:

It shall be a condition of employment that all employees of the Company covered by this Agreement who are members of the Union in good standing on the effective date of the Agreement shall remain members of the Union in good standing, and those who are not members as of the effective date of this Agreement, shall on or after the thirtieth (30th) day following the effective date of this Agreement, or date of employment, whichever is later, become and remain members in good standing in the Union.  This clause shall become effective on either the effective date or the execution date of this Agreement, whichever occurs first.

Section 3.    Removals from Employment:

The Union agrees that written notice shall be given to the Company at least seventy-two (72) hours before any regular employee is to be removed from his employment by reason

BRIN-CON-00000132

Exhibit 1, Page 9

of his failure to maintain his membership in good standing in the Union in accordance with Section 2, of this Article.   The Union shall assume any liability and hold the Company harmless from any action pursuant to this section.

Section 4.   .   Check Off:

The Company shall deduct from the wages of employees, upon written authorization from such employees, dues; initiation fees and assessments, and shall remit such deductions to the local office of the Union not later than the 10th day of the month following the month in which such payroll deductions are made. The Union shall assume any liability and hold the Company harmless from any action pursuant to this section.

## ARTICLE II

### MINIMUM DAY GUARANTEE

Section 1.   Reporting Pay:

Pay shall start at the scheduled start time of the employee's shift when the employee reports for duty at or before the employee's scheduled start time and shall continue until the employee is relieved from duty, exclusive of time off for meals.   Some projects may pay show-up time based on predetermined commercial arrangements.

Section 2.   Travel Time:

All time spent traveling from location to location within a refinery or plant shall be considered hours worked unless it is time spent while on a lunch break.

## ARTICLE III

### HOURS AND OVERTIME

Section 1.   Overtime Pay:

Employees working an eight (8) hour shift, five (5) day per week schedule will be paid at one and one-half (1½) times the applicable straight time rate for hours in excess of eight (8), but less than twelve (12) in one 24-hour period, in excess of forty (40) hours in one workweek, and for the first eight (8) hours worked on the seventh consecutive day of work; and double the applicable straight time rate for hours in excess of twelve (12) in one 24-hour period, and in excess of eight (8) hours worked on the seventh consecutive day of work.

Employees working a ten (10) hour shift, four (4) day per week schedule will be paid at one and one-half (1½) times the applicable straight time rate for any hours in excess of ten (10) hours, but less than twelve (12) hours in one 24-hour period and in excess of

BRIN-CON-00000133

Exhibit 1, Page 10

forty (40) hours in one workweek; and double the applicable straight time rate for hours in excess of twelve (12) in one 24-hour period, and any work in excess of eight (8) hours on those days worked beyond the regularly scheduled workdays.

Employees working a nine-eighty (9/80) alternative workweek schedule will be paid at one and one-half (1½) times the applicable straight time rate for any hours worked in excess of nine (9) hours but less than twelve (12) hours in a 24-hour period and in excess of forty (40) hours in one workweek; and double the applicable straight time rate for any hours worked in excess of twelve in a 24-hour period, and any work in excess of eight (8) on those days worked beyond the regularly scheduled workdays.   This is based on a workweek of 10:30 a.m. Friday to 10:30 Friday.

It is understood and agreed that the Company may require employees to work any alternative work week schedule allowed by law directly or indirectly without the payment of premium pay for hours worked within the alternative workweek schedule.

It is understood and agreed that "overtime hours worked" are those hours for which this collective bargaining agreement provides for payment of one and one-half (1½) the employee's straight time rate of pay (i.e., regular rate of pay) or double the employee's straight time rate of pay.

A change in starting times and shift schedules may be made at any time at the Company's discretion.

The Company may require any employee to perform overtime work.   The Company will determine when overtime work is necessary and who will work overtime.   Employees may be required to work seven consecutive days.

There shall be no pyramiding of overtime; overtime will not be paid under more than one of the classes of overtime for the same hours worked.

Any disputes on this issue will be resolved pursuant to the grievance and arbitration procedure.

Section 2.   <u>Work Period:</u>

The scheduled work week for any employee shall be seven (7) consecutive (24) hour periods beginning at 12:01 A.M. or P.M. on the first scheduled work day of a scheduled work week.   Some projects may utilize workweeks starting at different times based on customer preference.

BRIN-CON-00000134

Exhibit 1, Page 11

## ARTICLE IV

### REST AND MEAL PERIODS

Employees are entitled to unpaid meal periods in accordance with California law and Company policy. In accordance with California law and Company policy, employees are entitled to take one unpaid 30-minute meal period within the first five hours of the start of the employee's workday and to take a second unpaid 30-minute meal period when the employee works more than ten (10) hours in a workday. If an employee works more than ten (10) but not more than twelve (12) hours in a workday, the employee may waive a second unpaid 30-minute meal period if the employee did not waive his or her first unpaid 30-minute meal period. The second unpaid meal period will be assumed to be waived unless the employee works more than twelve (12) hours. Employees working more than twelve (12) hours are required to take a second unpaid lunch period. No employee shall be compelled to take more than one (1) continuous hour during such periods, nor compelled to take any part of such continuous hour before he has been on duty three (3) hours.

Employees are entitled to paid breaks in accordance with California law and Company policy. Employees are entitled to a rest period of 10 minutes net rest for every four (4) hours of work or major portion of four (4) hours. The rest period should be taken as close to the middle of each work period as possible. The rest period time will be counted as hours worked. The following table identifies the number of rest periods to which employees are entitled based upon hours of work in a workday.

| HOURS OF WORK | 10-MINUTE REST BREAKS |
|---|---|
| 0.0 – 3.5 | 0 |
| 3.5 – 6.0 | 1 |
| 6.0 – 10.0 | 2 |
| 10.0 – 14.0 | 3 |
| 14.0 – 18.0 | 4 |

The parties hereby acknowledge that it has always been understood and agreed between the parties that any dispute or grievance regarding overtime, meal periods, rest periods or any other subject matter covered by any and all wage orders issued by the State of California including Industrial Wage Order 16-2001, which covers on-site occupations in the construction, mining, drilling and logging industries, has been, and will be, processed under and in accordance with the dispute and grievance procedure set forth in the collective bargaining agreement between the parties.

The parties agree that the express incorporation of wage orders into the collective bargaining agreement may require covered employees to arbitrate, rather than litigate, claims arising under those statutes. The arbitrators hearing such statutory claims have full authority to remedy any violations in the manner provided for by the statute at issue.

BRIN-CON-00000135

Exhibit 1, Page 12

Covered employees are entitled to file charges with federal, state or local administrative agencies even with respect to claims that are subject to arbitration.

Where the Union takes an employee's statutory claim to arbitration under the Grievance and Arbitration procedure in Article XIII of this Agreement, that remedy shall constitute the employee's exclusive remedy for the arbitrated claim.   With regard to his/her statutory claim, the employee will be allowed to have individual representation of his/her own choosing in the arbitration with the employee bearing the cost of such individual representation.

Statutory claims that the Union does not take to arbitration, either because the employee has not requested that the Union do so or because the Union has declined a request to do so, may be pursued by the employee acting on his/her own under the AAA Employment Arbitration Rules applicable to Company-promulgated plans ("individual arbitration procedure") and the award of the arbitrator shall be final and binding on the Company and the employee.  The employee may invoke this arbitration procedure within 60 days of being notified that the Union will not take his/her statutory claim to arbitration or within 180 days of the allegedly unlawful employment action, whichever is later.  The Union may intervene in the arbitration or may be joined as a party on the same bases as would apply in a lawsuit brought in federal court.  The Union shall not be bound by any arbitration award where it was not a party and no such award may be cited by the Company or the Union in any other arbitration proceeding under the collective bargaining agreement.

The Company shall inform all covered employees that arbitration is the exclusive means of bringing claims under the named statutes and of their rights and obligations with respect to arbitrating such claims.  In particular, the Company shall inform employees that claims subject to the individual arbitration procedure will be processed in accordance with the AAA Employment Arbitration Rules and shall inform employees of how they may review a copy of those rules.  The Company shall give each new employee notice that arbitration is the exclusive means of pursuing claims under the named statutes and of the means for invoking arbitration.  In addition, the Company shall periodically give notice to all covered employees of the requirement to arbitrate certain statutory claims and the means of doing so either through the employee handbook or through other equally effective means.  Failure of the Company to so notify a particular employee of his/her rights and obligations in this regard shall waive the Company's right to insist on arbitration as a defense to any lawsuit brought by an employee who has not in fact received notice.

## ARTICLE V

## GRIEVANCE AND ARBITRATION

Section 1.    Procedure:

BRIN-CON-00000136

Exhibit 1, Page 13

Should any controversy, dispute, or disagreement arise during the term of this Agreement, there shall be no form of economic activity by either party against the other party because of such controversy, dispute or disagreement, but the difference shall be adjusted as follows;

1. The involved employee shall first attempt to resolve the issue(s) with his immediate supervisor or other representative designated by the Company, within ten (10) days of the occurrence or first knowledge thereof.

2. If the issue remains unresolved in Paragraph 1 of the above, the Union and the Company will meet to resolve the issue within ten (10) days.

3. If the issues remain unsolved under the provisions of Paragraph 2 above, written notice of the grievances shall be filed with the standing committee within ten (10) days of the meeting described in paragraph (2) above.

4. It is agreed and understood that the two (2) chairmen of the negotiating committee shall comprise the original standing committee. This standing committee may be enlarged upon mutual agreement by adding additional members in equal number from each party. Members of the committee shall designate their own replacements. Upon receipt of written notice from either party setting forth the nature of the dispute, the two chairmen of the standing committee, shall within a calendar month from receipt of such written notice, attempt to reach a settlement. This committee shall interpret the intent and application of this agreement and any deadlock decision resulting from this standing committee shall be referred to arbitration.

5. If the matter is deadlocked after receipt of the written notice described in Paragraph 4 above, such dispute shall be referred to the Federal Mediation and Conciliation Service, American Arbitration Association, or an impartial Arbitrator, mutually accepted and agreed upon by the Company and the Union. The decision of the arbitrator upon the question in dispute shall be final and binding upon the parties hereto; however, the arbitrator shall not have the authority to change, alter, or modify any of the terms or provisions of this Agreement. If the intent or meaning of the arbitration award is disputed, such dispute shall be re-submitted to the arbitrator for clarification.

6. If either party fails to abide by the decision of the arbitrator; the other party shall have the sole remedy of enforcement of the decision in a court of proper jurisdiction.

BRIN-CON-00000137

Exhibit 1, Page 14

7.   The expense of the arbitration and all mutual facilities and services shall be borne equally by the Company and the Union, regardless of the final ruling or outcome of the arbitration.

8.   ~~The parties hereby further acknowledge and agree that any dispute, claim, grievance, or cause of action arising out of an employee's employment with the Company shall be fully and finally resolved in accordance with the dispute and grievance procedure set forth in this collective bargaining agreement between the parties and that all employees subject to this collective bargaining agreement waive whatever right(s) they otherwise might have had to have such disputes, claims, grievances, or causes of action resolved by any other means, including, but not limited to, whatever right(s) they might otherwise have had to have such disputes, claims, grievances, or causes of action determined or decided by a trial court, by a jury, and/or by an appellate court.~~

Section 2.   Limitation:

All claims shall be limited to a maximum of thirty (30) days retroactive from the date the claim is submitted to the Company in writing.

Any such grievance, claim or dispute not submitted within such time shall be waived unless both members of the standing committee, for good cause, accept such submission, or unless either party has intentionally concealed the facts upon which the grievance, claim or dispute is based.

Section 3.   Discharge or Suspension:

The Company shall not discharge nor suspend any employee without good cause, but in respect to discharge or suspension shall give at least one (1) warning notice of the complaint against such employee in writing, a copy of same to the Union; except that no warning notice need be given to an employee before he is discharged or suspended if the cause therefore is any of the following:

(a)   Dishonesty,

(b)   Drinking of alcoholic beverages or drunkenness on Company time,

(c)   Recklessness resulting in a serious accident,

(d)   The carrying of unauthorized passengers,

(e)   Selling, transporting, use or under the influence of controlled substances while in the employ of the Company,

BRIN-CON-00000138

Exhibit 1, Page 15

(f)     Unprovoked assault on anyone including employee, client, or supervisor,

(g)     Insubordination,

(h)     Abuse of equipment,

(i)     Any serious violation of Company rules or regulations.

Section 4.     <u>Warning Notices:</u>

1.     Warning notices shall not remain in effect for more than one (1) year except for major safety infractions which shall be three (3) years from the date of the warning notice. To be considered valid, such warning notices must be issued within ten (10) days or first knowledge thereof, exclusive of Saturday, Sunday and holidays after the occurrence of the violation claimed by the Company in such warning notice.

2.     Discharge or suspension must be by proper written notice to the employee and the Union within ten (10) days or first knowledge thereof, exclusive of Saturday, Sunday and holidays of the occurrence, constituting the basis of discharge or suspension.

3.     Protests to warning notices and discharge or suspension must be made in writing to the Company within ten (10) days of receipt thereof or employee will be deemed to have waived all right to protest.

## ARTICLE VI

### PROBATIONARY EMPLOYEES

Newly hired employees shall be probationary employees for their first thirty (30) days of employment and any discharges or layoffs during this period shall not be subject to the grievance and arbitration procedure.

## ARTICLE VII

### NO STRIKE - NO LOCKOUT

For the period of this Contract, there shall be no strikes or lockouts for any reason whatsoever, including sympathy strikes, except that no employee shall be discharged or disciplined for his refusal to cross or work behind a lawful and primary picket line authorized or sanctioned by the Union.

004845.00041/15288819v1

8

BRIN-CON-00000139

## ARTICLE VIII

## WORK ASSIGNMENT

Work assignments shall be entirely at the discretion of the Company without regard to seniority or classification.   Any dispute shall be settled under the grievance and arbitration procedure as outlined in this Agreement.

## ARTICLE IX

## DISCHARGE AND APPEAL

In the event an employee is discharged from employment and he/she, or the Union consider the discharge to be without good cause, then the case may be appealed directly under the Grievance Procedure.   If it is not appealed within ten (10) days of the discharge, then the discharge will be final.

## ARTICLE X

## LEAVES OF ABSENCE

Section 1.   Union Leave of Absence:

The Company agrees to grant the necessary and reasonable time off up to five (5) working days, without discrimination and without pay, to any employee designated by the Union to attend a labor convention or serve in any capacity or other official Union business, provided forty-eight (48) hours written notice is given to the Company by the Union, specifying the length of time off. The Union agrees that in making its request for time off for Union activities, due consideration shall be given to the number of employees affected in order that there shall be no disruption of the Company's operations due to lack of available employees.

Section 2.   Leave of Absence:

1. The Company shall comply with all applicable laws concerning leaves of absence.

2. Personal leaves of absence without pay, not exceeding thirty (30) days, will be granted to employees for justifiable non-medical reasons when the granting of such leave will not create an economic hardship for the Company.   Longer leaves may also be given under special circumstances upon the agreement of both the Company and the Union.  It is understood and agreed that the Company cannot guarantee that an employee who takes a personal leave of absence will be re-employed to his/her former position.

004845.00041/1528889v1

BRIN-CON-00000140

Exhibit 1, Page 17

However, the Company will reinstate an employee granted a leave into the labor pool upon that employee's return from leave.

3. The Company shall, upon reasonable written notice by the employee, and written request of the employee and the Union, grant a leave of absence without pay, for a period in excess of thirty (30) days, but not exceeding one (1) year to engage in any work pertaining to the business of the Union to not more than three (3) employees, provided that such employees have more than one (1) year of continuous service.

4. Any employee who reports for jury duty or is a subpoenaed witness during his/her scheduled work hours, will be allowed time off without pay. There will be no differential pay supplied to the regular jury duty pay as provided by the court.

## ARTICLE XI

### UNION VISITATION RIGHTS

In connection with the administration of this Agreement, representatives of the Union shall be entitled, at reasonable times, and so as not to unreasonably interfere with the operations of the Company, to confer with management representatives and Union members at the Company's premises. Prior to visiting jobsites, the Union will contact the Company and make appropriate arrangements.

## ARTICLE XII

### UNION BULLETIN BOARD

A bulletin board will be provided by the Company for the posting of Union notices. Posting by the Union on such boards are to be confined to official business of the Union.

## ARTICLE XIII

### COMPANY RULES

The Union recognizes the right of the Company to establish such reasonable Company rules as it may deem necessary, provided that such rules are not in conflict with the terms and provisions of this Agreement. Company rules shall be in writing and effective thirty (30) days after submission to the Union. Any objection by the Union must be specified as to what rule or rules are being protested and the parties will immediately meet to resolve any dispute. If the dispute is not resolved the Union reserves the right to file a grievance.

BRIN-CON-00000141

**Exhibit 1, Page 18**

## ARTICLE XIV

## TIME SHEETS – PAY PERIODS AND PAY DAYS

Section 1.     Pay Periods:

All employees covered by this Agreement shall be paid in full each week.  Not more than seven (7) days pay shall be held back on an employee's pay, provided, however, that present arrangements shall not be disturbed by this provision.  The Company shall have a regularly designated pay day for employees, and such pay day shall not be changed without agreement of the Company and the Union.

Section 2.     Pay Days:

When a regular designated pay day falls on a Sunday or a holiday, the paychecks for the employee not designated to work on such Sunday or holiday, shall be made available on the preceding day.  The Company will not be held responsible or penalized for delay in payroll due to an Act of God.

Section 3.     Paycheck Items:

The Company shall furnish each employee with an itemized statement of earnings and deductions, hours paid, straight-time and overtime, vacation pay, holiday pay, and other compensation payable to the employee, which is included in the check.  Employees will record their time as required by the Company.  Upon discharge, the Company shall pay all money due the employee as prescribed by State or Federal Law.

## ARTICLE XV

## EXAMINATION AND IDENTIFICATION FEES

Section 1.     Examination Fee:

Physical, mental, or other examinations required by a government body or the Company, shall be promptly complied with by all employees, provided however, the Company shall pay for all such examinations.

Section 2.     Examination Methods:

The Company reserves the right to select its own medical examiner or physician and the Union may, if it believes an injustice has been done an employee, have said employee re-examined at the employee's expense.

004845.00041/1528889v1

BRIN-CON-00000142

**Exhibit 1, Page 19**

Section 3.   <u>Examination Disagreement:</u>

In the event of disagreement between the Doctor selected by the Company and the Doctor selected by the Union, the Company's and employee's Doctor shall together select a third Doctor within thirty (30) days, whose opinion shall be final.

Section 4.   <u>Employee Identification:</u>

Should the Company find it necessary to require employees to carry personal identification badge, such a requirement shall be complied with by the employees. The cost of such personal identification shall be borne by the Company.

## ARTICLE XVI

## SUBSTANCE ABUSE POLICY & PROGRAM

Section 1.   <u>Substance Abuse Policy</u>

1.   For the purpose of this policy, the term "drug" is defined to include illegal drugs, controlled substances, narcotics and abused prescriptions drugs, and prescription drugs which are not legally obtained or not being used for their prescribed purposes.

2.   The use, possession, transfer, sale, or purchase of drugs, and/or unlawful substance is absolutely prohibited during working hours and while operating company vehicles or equipment or on company or customer premises.

3.   The proper use of prescribed drugs as part of a medical treatment program is not a violation of this policy. Employees who believe or have been informed that their use of a legal drug may present a safety risk are to report such drug use to Company supervision to ensure the safety of themselves, other employees, company property and company vehicles.

4.   Being under the influence of alcohol during working hours or while operating company vehicles or equipment is strictly prohibited.

5.   Any employee who is found to be in violation of the substance abuse policy described above shall be subject to discipline up to and including immediate discharge.

004845.00041/1528889v1

BRIN-CON-00000143

Exhibit 1, Page 20

Section 2.   <u>Substance Abuse Program</u>

   1.    All applicants or newly hired employees will undergo a drug test at a facility designated by the Company.  Any applicant with a positive drug test will be ineligible for employment.

   2.    Employees, who are involved in industrial accidents, resulting in personal injury or damage to company or private property during working hours, will be required to submit to a drug test.

   3.    Reasonable cause for the screening of an employee for the use of drugs or alcohol shall include, but not be limited to:

      (a)    Reporting to work in a state unfit for duty which might reasonably be thought to be caused by drugs or alcohol;

      (b)    Involvement or contributing to an accident caused by disregard of proper procedures and/or safety regulations;

      (c)    Grossly negligent behavior which might reasonably be thought to be caused by drugs or alcohol or which results in a lost-time injury; or

      (d)    A demeanor, either physical, mental, or both, or appearance or actions which might be reasonably thought to be caused by drugs or alcohol.

Section 3.   <u>Test Results</u>

Positive results - If the results of any drug or alcohol test are positive, the employee will be subject to disciplinary action up to and including discharge.  Positive results for an applicant will preclude hiring.

Negative results - If the results of any drug or alcohol test are negative, any time lost by an employee will be at the Company's expense.

**ARTICLE XVII**

**SAFETY COMMITTEE**

The Company and the Union will establish a Safety Committee.

004845.00041/1528889v1

BRIN-CON-00000144

Exhibit 1, Page 21

## ARTICLE XVIII

## SEVERABILITY CLAUSE

Should it be found that any provisions of this Agreement are in conflict with any Federal and/or State law now existing, or any laws later imposed, any part of this Agreement in conflict shall be void and considered open for negotiations, but the remainder of this Contract will remain in full force and effect.

## ARTICLE XIX

## WAGES

The employees shall be paid at least the minimum wage rates set forth in Appendix A.

## ARTICLE XX

## COMPANY HEALTH INSURANCE PROGRAM

Employees may be eligible to participate in the Company's health insurance program. The current program provides full-time employees with important life, medical, dental and vision insurance benefits. More specific information about these benefits is contained in the Summary Plan Description. The cost of the program is shared by the Company and participating employees. The benefits and/or pay available under this Article are subject to change and/or termination at the Company's discretion.

## ARTICLE XXI

## ALTERNATIVE DISPUTE RESOLUTION

The Union and the Company do hereby agree to enter into an Alternative Dispute Resolution ("ADR") agreement as authorized by Labor Code Section 3201.5 and provide for its implementation and operation during the course of this Labor Agreement. This "ADR" agreement will be separate from this Labor Agreement and will be negotiated and executed upon ratification of this agreement.

## ARTICLE XXII

## APPRENTICESHIP PROGRAM

The parties agree that it is the best interest of all concerned to properly train the employees so they may achieve journeyman levels. In this regard the Union and the Employer agree to cooperate whenever possible and feasible to enroll employees in state and federal approved apprenticeship programs so as to improve the skills of the employees.

BRIN-CON-00000145

Exhibit 1, Page 22

The parties agree that if a state-approved or federal-approved apprenticeship program will dispatch apprentices to the Company or will accept apprentices employed by the Company that the parties will meet and negotiate an appropriate side letter so as to make the apprenticeship training available to all qualified employees.

## ARTICLE XXIII

## MANAGEMENT RIGHTS

The Union acknowledges that all rights and prerogatives of management which the Company had prior to the execution of this Agreement are retained solely and exclusively by the Company, without limitation, except as specifically modified by the express terms of this Agreement, including, but not limited to: the right to maintain order, discipline and efficiency; the right to make, initiate, alter and enforce reasonable employee rules, regulations, policies and practices; the right to discipline and discharge employees for good cause; the right to select, hire, train, direct and control the working force and employees; the right to transfer, assign, promote, demote, classify, reclassify, layoff, recall, replace and suspend employees; the right to introduce new and eliminate or change existing equipment, machinery, services or processes; the right to make studies of work loads and institute changes in the work loads and job assignments; the right to plan, direct and control operations; the right to select and retrain employees for positions excluded from the bargaining unit; the right to determine the location and extent of its operations and their commencement, expansion, curtailment or discontinuance in whole or in part; the right to control productivity; the right to determine the schedule of production; the right to determine the job content and requirements of any job or classification; the right to determine the number and qualifications of employees needed by the Company at any time and the number of qualifications of employees who shall operate on any given job, operation or unit of equipment; the right to maintain or establish standards of quality and quantity to be maintained.

The above enumeration of the Company's rights shall not be a limitation on the Company's right to manage the enterprise and its business without interference, which rights are solely and exclusively the rights of the Company, and the continuance or discontinuance of any past practice or benefit not enumerated in this Agreement is vested solely in the discretion of the Employer.

## ARTICLE XXIV

## EQUAL OPPORTUNITY EMPLOYMENT

1.    The Company shall not refuse to hire, nor shall the Company discharge or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of

BRIN-CON-00000146

Exhibit 1, Page 23

such individual's race, color, religion, sex, age, national origin, disability status, union activity, or any other classification protected by law.

2.  The Company shall not limit, segregate, or classify employees in any way which would deprive or tend to deprive any individual of employment opportunities or promotion opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, age, national origin, disability status, union activity, or any other classification protected by law.

3.  The Union shall not discriminate against any individual because of his race, color, religion, sex, age, national origin, disability status, general attitudes toward the Union, or any other classification protected by law.

4.  The Union shall not limit, segregate, or classify its membership, or fail to refuse to refer for employment any individual, in any way which would deprive or tend to deprive any individual of employment opportunities, or would limit such employment opportunities because of such individual's race, color, religion, sex, age, national origin, disability status, general attitudes towards unions or any other classification protected by law.

5.  The Union shall not cause or attempt to cause the Company to discriminate against any individual in violation of any of the provisions of this section.

6.  This Agreement prohibits conduct which would violate laws regulating the workplace and conduct by and between the Company and the Union and/or employees. Issues involving such prohibited conduct, if alleged to be a violation of the agreement and/or applicable law, shall be resolved under the grievance and arbitration procedures contained in this collective bargaining agreement.

### ARTICLE XXV

#### 401 K PLAN

Employees may be eligible to participate in a company sponsored 401K Plan. The corporate contribution will be based on employee contributions during the calendar year and are credited as contributed. Employer contributions are subject to a three (3) year vesting schedule. Details of the 401K plan and employer contributions are available from the Company Benefits Specialist. The Company reserves the right to modify the Plan in accordance with its terms at the Company's sole discretion.

004845.00041/1528889v1

BRIN-CON-00000147

Exhibit 1, Page 24

## ARTICLE XXVI

### SENIORITY

Employees who are recalled from layoff within one hundred and twenty (120) days of the date of their layoff will not be considered to have a break in service for purposes of benefit entitlement if they have one (1) year of service or more.

## ARTICLE XXVII

### TERM OF AGREEMENT

Section 1.    Term:

This Agreement shall become effective as of June 1, 2010 and shall continue in full force and effect until May 31, 2013 and thereafter from year to year, unless either party hereto shall give thirty (30) days written notice to the other of its desire to modify, amend, or terminate this Agreement.

DATED: _12-21-10_

Brinderson Constructors, Inc.
3330 Harbor Boulevard, Suite 100
Costa Mesa, California 92626-1502

By: _ALAN R. UPDYKE_ , President

DATED:_____

United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union on Behalf of International Union of Petroleum and Industrial Workers - United Steel Workers, Local 1945
8131 Rosecrans Ave
Paramount, CA 90723-2732

By: _____

By: _____

04845.00041/1528889v1

17

BRIN-CON-00000148

Exhibit 1, Page 25

IN WITNESS WHEREOF, the parties hereto have set their hands.

Approved this _____ day of _____, 20 _____.

### FOR THE UNION

United Steel, Paper and Forestry, Rubber
Manufacturing, Energy, Allied Industrial
and Service Workers International Union

_____
Leo W. Gerard, International President

_____
Thomas M. Conway, International Vice
President (Administration)

_____
Fred Redmond, International Vice President
(Human Affairs)

_____
Stanley W. Johnson, International
Secretary/Treasurer

_____
Robert LaVenture, Director, District 12

_____
Rick Latham, Sub-District Director

_____
Ron Espinoza, Staff Representative

_____
Bernard Hostein, President
IUPIW-USW Local 1945

_____
Carlos Preza
IUPIW-USW Local 1945

_____

_____

BRIN-CON-00000149

Exhibit 1, Page 26

## APPENDIX A

### PAY CLASSIFICATION AND WAGES

Wage rates for the first year of the Agreement are as follows:

The classifications listed below are those covered by the National Master Agreement between the Union and the Company.  Other classifications involving essentially the same functions and duties as those listed below are considered to be covered by the Agreement even though not listed. **The pay rates indicated are minimums.**

| CLASSIFICATION | RATE | CLASSIFICATION | RATE |
|---|---|---|---|
| CERTIFIED WELDER | 20.00 | QUALITY CONTROL TECHNICIAN | 18.00 |
| CONSTRUCTION CLERK | 12.00 | LAYOUT FITTER | 19.00 |
| CRAFT HELPER | 14.00 | MILLWRIGHT | 18.00 |
| CRAFTSMAN A (all crafts) | 17.00 | CRANE & DIRT EQUIPMENT OPERATOR | 19.00 |
| CRAFTSMAN B (all crafts) | 15.00 | SAFETY WATCH | 12.00 |
| TRUCK DRIVER | 13.00 | TIMEKEEPER | 13.00 |
| SAFETY SPECIALIST | 18.00 | TOOL KEEPER | 13.00 |
| FUGITIVE TECHNICIAN | 16.00 | PLUMBER | 17.00 |
| FIRE WATCH | 12.00 | CONSTRUCTION WAREHOUSEMAN | 12.00 |
| LABORER | 10.50 | TEMPORARY FOREMAN | 18.00 |
| PIPEFITTER A | 17.00 | INDUSTRIAL PAINTER | 15.00 |
| PIPEFITTER B | 15.00 | BRICK MASON | 16.00 |
| BOILERMAKER A | 17.00 | CEMENT FINISHER A | 17.00 |
| BOILERMAKER B | 15.00 | CEMENT FINISHER B | 15.00 |

0048 45.00041/1528889v1

BRIN-CON-00000150

| ELECTRICIAN A | 17.00 | INSTRUMENT TECHNICIAN | 17.00 |
|---|---|---|---|
| ELECTRICIAN | 15.00 | CARPENTER | 17.00 |
| SHEETMETAL WORKER | 17.00 | RIGGER | 14.00 |
| IRONWORKER | 17.00 | ROUSTABOUT | 12.00 |
| FORKLIFT OPERATOR | 14.00 | ELECTRICIAN | 17.00 |
| LANDSCAPE LABORER | 11.50 | | |

All employees shall be paid at least 30% over the minimum wage for the State of California.

Travel Pay for Drivers:    Shall be 30% over the state minimum wage rate

The parties will meet at or near each anniversary date of this Agreement to discuss possible modifications to the Agreement.

Time spent at training which is required by the Company or where payment is required by law and which occurs outside of the regularly scheduled workday will be compensable under this Agreement at the rate of 30% over the state minimum wage.

I04845.00041/1528889v1

BRIN-CON-00000151

Exhibit 1, Page 28